IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CARLSON CONSTRUCTORS CORP., *et al.*,<br><br>Defendants. | No. 17-cv-04242<br>Judge Franklin U. Valderrama |

**Order**

Plaintiffs, the Chicago Regional Counsel of Carpenters Pension Fund, the Chicago Regional Council of Carpenters Welfare Fund, the Chicago and Northeast Illinois Regional Counsel of Carpenters Apprentice and Trainee Program, and the Labor/Management Union Carpentry Cooperation Promotion Fund, and their respective trustees (collectively, the Trust Funds), sued Carlson Constructors Corp. (Constructors), Carlson Brothers, Inc. (Brothers), and CB Industries, Inc. (collectively, Defendants) under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.,* for delinquent contributions to the Trust Funds R. 22, Am. Compl.[1]

The Trust Funds are multi-employer funded benefit funds governed by federal law; they collect and manage contributions from employers pursuant to collective

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

bargaining agreements made between employers and the Chicago and Northeast Illinois District Council of Carpenters, successor of the Chicago District Council of Carpenters (the Union).

The parties filed cross-motions for summary judgment on the issue whether the Companies were bound by the collective bargaining agreements with the Union based on the single-employer and alter-ego doctrines, and thus required to contribute to the Trust Funds based upon hours worked by employees and/or subcontractors. R. 83, Pls.' Mot. Summ. J.; R. 101, Defs.' Cross-Mot. Summ. J. The Court granted Plaintiffs' motion and denied Defendants' cross-motion, finding that the contract between Brothers and the Union signed in 1994 did not terminate until 2019, and that the Defendants are a single employer. R. 140, Summ. J. Order.

Now before the Court is Plaintiffs' fully briefed motion for summary judgment on damages. R. 161, Mot. Summ. J. For the reasons discussed below, Plaintiffs' motion is granted.

## Background

### I. Local Rule 56.1

Before considering the substance of Plaintiffs' motion, the Court addresses the Local Rule 56.1 issues raised by Defendants.

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in the Northern District of Illinois. Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must

be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). Under Local Rule 56.1(b)(3), the nonmovant must counter with a response to the separate statement of facts, and either admit each fact, or, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. Local R. 56.1(b)(3)(B). The nonmoving party may also present a separate statement of additional facts "consisting of short, numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. Local R. 56.1(b)(3)(C).

"All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.*; *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019).

Similarly, "[i]f additional material facts are submitted by the opposing party . . ., the moving party may submit a concise reply in the form prescribed in that section for a response." N.D. Ill. Local R 56.1(a). If the movant fails to respond properly to the opposing party's statement of additional facts, those facts will be deemed admitted. *Id.* District courts have discretion to enforce strict compliance with Local

Rule 56.1's requirements. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015); *see also Hanover Ins. Co. v. House Call Physicians of Ill.*, 2016 WL 1588507, at *2 (N.D. Ill. Apr. 19, 2016) (collecting cases).

The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up).[2]

As a threshold matter, Defendants move to strike portions of Plaintiffs' statement of facts, arguing that they are riddled with legal statements and improper argument in violation of Local Rule 56.1. Resp. at 1.

As the Court noted in its Memorandum Opinion and Order granting Plaintiffs' Motion for Summary Judgment and denying Defendants' Cross-Motion for Summary Judgment, portions of the parties' Local Rule 56.1 submissions that make legal arguments and assert legal conclusions will not be considered. *Rivera v. Guevara,* 319 F. Supp. 3d 1004, 1017–18 (N.D. Ill. 2018) (collecting cases disregarding or affirming the decision to disregard argumentative statements of fact). But the Court declines to strike the noncompliant paragraphs, "as doing so would in some cases throw out a properly supported assertion along with a legal argument or conclusion." *Id.*

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Rather, the Court will consider the properly supported factual assertion but disregards the portion of any factual statement that contains legal arguments or conclusions. *See id.* (citing *Minn. Life Ins. Co. v. Kagan*, 847 F. Supp. 2d 1088, 1093 (N.D. Ill. 2012) (denying motion to strike portions of Local Rule 56.1 statements containing legal conclusions but disregarding conclusions); *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771–72 (N.D. Ill. 2012) (same)). Where any such facts are material to the Court's analysis, the Court notes them within this Opinion. That said, as Plaintiffs' correctly note, testimony regarding damages calculations is generally admissible for summary judgment. *See e.g., Bd. of Trustees of Plumbers' Loc. Union No. 93 U.A. v. Boston Plumbing, Inc.*, 2012 WL 3758032, at *3 (N.D. Ill. Aug. 28, 2012); Reply at 13–15.

The Court observes that Plaintiffs' failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting Defendants' motions. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court applies these standards in evaluating the evidence.

Defendants also seemingly move to strike portions of Paragraph 10 of the Declaration of John Conklin, arguing that because Conklin's declaration states he became employed by Plaintiffs in 2010, he provides no basis for his knowledge of policies and procedures adopted by Plaintiffs in 2008. Defs.' Resp. PSOF ¶ 11.

Similarly, the Court declines to strike Paragraph 10 for the reasons articulated *infra* at 14–15. The Court now turns to the merits of Plaintiffs' motion.

## II. Relevant Facts[3]

On May 29, 2001, Constructors signed a contract with the Union, agreeing to abide by the terms of the Trust Agreements and the Area Agreement[4] negotiated between the Union and the employers. R. 171, Defs.' Resp. PSOF ¶ 9. Employers bound by the Area Agreement are also bound by all rules and regulations adopted by the Trustees of the Trust Funds. *Id.* ¶ 10.

Section 3.2 of the Area Agreement prohibits an employer from subcontracting jurisdictional work to non-union subcontractors. Decl. of K. Guastaferri ¶ 3, Exhibit E (Area Agreement §1.1); PSOF ¶ 5. Jurisdictional work, as defined by the Area Agreement, includes

> [W]ork at the construction site covered by the occupational jurisdiction of the "Union" including, but not limited to, the milling, fashioning, joining, assembling, erection, fastening or dismantling of all material of wood, plastic, metal, fiber, cork, and composition, and all other substitute materials; concrete forming, gang forms; the handling, erecting, installing and dismantling of machinery and equipment, hydraulic jacking and raising, and the manufacturing of all materials where the skill, knowledge and training of the Employees are required, either through the operation of machine or hand tools.

---

[3]This Order assumes familiarity with the facts of this case as set forth in the Court's Memorandum Opinion and Order granting Plaintiffs' Motion for Summary Judgment and denying Defendants' Cross-Motion for Summary Judgment. R. 140.

[4]On March 24, 2022, the Court granted the Trust Funds' motion for partial summary judgment, holding that Defendants are all bound by the Area Agreement with the Union based on the single-employer doctrine. Summ. J. Order at 50, 57–58. The Court also concluded that Defendants were bound by the Area Agreement through May 31, 2019 because Brothers, like Constructors, was a signatory to an agreement with the Union. *Id.* at 19, 22.

*Id*.

The Area Agreement further defines jurisdictional work to include the installation of artificial turf (also referred to as simulated turf), carpet, and resilient floor materials. PSOF ¶ 6, (Area Agreement § 25.5). Specifically, Section 25.5 clarifies that the work of installers of Floor and Wall Products encompasses the preparation and/or forming of materials using various methods, such as hot iron, cement, cemented tape, tacking, stapling, or sewing, for installation on floors, walls, stairs, ceilings, fixtures, furnishings, and exterior applications. *Id*. This scope extends to structures, patios, pool perimeters, area ways, and other similar applications, including simulated turf. *Id*.

In the event an employer breaches Section 3.2 of the Area Agreement by subcontracting jurisdictional work to non-union subcontractors, under Section 3.5, the employer must either (i) require the subcontractor to become a signatory to the Area Agreement or, (ii) the employer shall maintain daily records of the employees who perform the work, and then pay the requisite fringe benefit contributions for the work performed by those employees. *Id*.; Defs.' Resp. PSOF ¶ 8.

Failure to comply with Section 3.5 triggers the Employer Compliance Audit Agreed-Upon Procedures (Agreed-Upon Procedures), rules and regulations by the Trustees of the Trust Funds, originally adopted in April 2008 and revised in May 2016. Decl. of J. Conklin ¶¶ 10–12, Exhibits B, C; PSOF ¶ 11.

The Agreed-Upon Procedures include a formula for determining the fringe benefit contribution liability of the noncompliant employer. *Id*. This calculation depends on the nature of the subcontracted work and whether it involves labor alone

or labor and materials. *Id.* A Labor Factor is applied to the subcontract amount to establish the portion attributable to labor. *Id.* The resulting dollar amount for labor is then divided by either the subcontracted entities' labor hourly pay rate (if known) or the Union journeyman scale (if unknown) to calculate the Agreed-Upon hours of jurisdictional work and the corresponding unpaid fringe benefit contributions. *Id.*

The Agreed-Upon Procedures state the following:

> Calculation of Hours:
>
> - **No invoice provided**: Divide the payment amount by the entities' labor rate [listed on current or previous invoices] or journeyman scale (if unknown).
> - Invoice reflects **labor only or labor dollars**: Divide the labor dollars for jurisdictional work or payment amount (if unknown) by the entities' labor rate [listed on current or previous invoices] or journeyman scale (if unknown).
> - Invoice made **no mention of materials**: Divide the payment amount for jurisdictional work (if known) by the entities' labor rate [listed on current or previous invoices] or journeyman scale (if unknown).
> - Invoice reflects **material and labor but no breakdown**: Multiply the payment by the appropriate labor factor (see below list ) and then divide by the entities' labor rate [listed on current or previous invoices] or journeyman scale (if unknown).

| Type of Work | Labor Factors |
|---|---|
| Floor refinishing, sanding or staining | 75% |
| Carpeting or Overhead Garage Door Installation | 15% |
| Caissons | 40% |
| Exterior Insulated Finished System (EIFS) | 33% ** |
| Any other jurisdiction work | 33% |

> ** Include 50% of these hours in the discrepancies since this work is half carpentry and half plastering

PSOF ¶ 11; Decl. of J. Conklin ¶¶ 10–12, Exhibits B, C.

The Trust Funds retained Legacy Professionals, LLP to conduct an audit of Carlson Constructors Corp.'s fringe benefit contributions. Defs.' Resp. PSOF ¶ 12. This audit covered the period from July 1, 2014, to December 31, 2017. *Id.*

Subsequently, it was discovered that Brothers was the general contractor for the following projects in DuPage County, Illinois: (1) Artis Senior Living of Bartlett

at 1035 S. Route 59, Bartlett, Illinois (Artis Bartlett); (2) Artis Senior Living of Elmhurst at 123 Brush Hill Road, Elmhurst, Illinois (Artis Elmhurst); and (3) Metro 59 Apartments and Clubhouse at Meridian Lake Drive and Illinois Route 59, Aurora, Illinois (Metro 59). DuPage County is within the geographic jurisdiction of the Union. Defs.' Resp. PSOF ¶ 13.

Throughout these Projects, Brothers subcontracted work to entities that were not bound by the Area Agreement for jurisdictional work, as outlined:

- A Cut Above Construction Services LLC – Provided framing, rough carpentry, and installation of doors, frames and roof trusses, finish carpentry, architectural millwork, and installation of finish hardware, vanity tops, toilet room accessories, and kitchen cabinets at Artis Bartlett and Artis Elmhurst. PSOF ¶¶ 14–18.

- Garcia Professional Drywall, Inc. – Completed drywall installation at Artis Bartlett and Artis Elmhurst. PSOF ¶¶ 24–26.

- Riterug Company – Installed resilient tile and carpet installation at Artis Bartlett and Artis Elmhurst. PSOF ¶¶ 30–32.

- Custom Countertop – Handled countertop installation at Artis Bartlett. PSOF ¶¶ 36–37.

- ZLC Inc. – Installed siding installation at Artis Bartlett and Artis Elmhurst. PSOF ¶¶ 40–42.

- Euroview, Inc. – Installed closet shelving installation at Artis Bartlett and Artis Elmhurst. PSOF ¶¶ 46–48.

- Twin Oaks Landscaping, Inc. – Completed artificial turf installation at Artis Bartlett and Artis Elmhurst and Artis Elmhurst. PSOF ¶¶ 53–54.[5]

- Team Installers, Inc. – Installed installation of insulation at Artis Bartlett and Artis Elmhurst. PSOF ¶¶ 58–60.

[5]Defendants deny this was jurisdictional work. Defs.' Resp. PSOF ¶ 53. The Court rejects Defendants' view for the reasons discussed herein.

- U.S. Roofing, Inc. – Installed shingle roofing at Artis Bartlett and Artis Elmhurst. PSOF ¶¶ 64–66.

- Peerless Fence, Inc. – Installed vinyl fencing at Artis Elmhurst. PSOF ¶¶ 70–71.

- Signs by Tomorrow, Inc. – Installed interior signs at Metro 59. PSOF ¶¶ 74–75.

Plaintiffs are now pursuing fringe benefit contributions related to this work, as well as other statutory and applicable damages (*infra* at 14). *See generally* Mot. Summ. J. To provide clarity on the extent of this liability, Plaintiffs' breakdown of hours and corresponding fringe benefit contributions, based on the Agreed-Upon Procedures, are as follows:

- A Cut Above Construction Services LLC at Artis Bartlett: 6,317.25 hours of jurisdictional work and unpaid fringe benefit contributions of $197,746.99. PSOF ¶¶ 20–21.

- A Cut Above Construction Services LLC at Artis Elmhurst: 7,146.25 hours of jurisdictional work and unpaid fringe benefit contributions of $217,746.24. PSOF ¶¶ 22, 23.

- Garcia Professional Drywall, Inc. at Artis Bartlett: 1,112.00 hours of jurisdictional work and unpaid fringe benefit contributions of $33,882.64. PSOF ¶ 28.

- Garcia Professional Drywall, Inc. at Artis Elmhurst: 1,107.00 hours of jurisdictional work and unpaid fringe benefit contributions of $33,730.29. PSOF ¶ 29.

- Riterug Company at Artis Bartlett: 716.25 hours of jurisdictional work and unpaid fringe benefit contributions of $21,824.14. PSOF ¶ 34.

- Riterug Company at Artis Elmhurst: 770.00 hours of jurisdictional work and unpaid fringe benefit contributions of $23,461.90. PSOF ¶ 35.

- Custom Countertop Creations at Artis Bartlett: 181.50 hours of jurisdictional work and unpaid fringe benefit contributions of $5,795.30. PSOF ¶ 39.

- ZLC, Inc. at Artis Bartlett: 645.50 hours of jurisdictional work and unpaid fringe benefit contributions of $19,668.39. PSOF ¶ 44.
- ZLC, Inc. at Artis Elmhurst: 770.50 hours of jurisdictional work and unpaid fringe benefit contributions of $22,544.83. PSOF ¶45.
- Euroview, Inc. at Artis Bartlett: 29.00 hours of jurisdictional work and unpaid fringe benefit contributions of $925.97. PSOF ¶ 50.
- Euroview, Inc. at Artis Elmhurst: 33.50 hours of jurisdictional work and unpaid fringe benefit contributions of $1,020.75. PSOF ¶ 51.
- Twin Oaks Landscaping, Inc. at Artis Bartlett: 356.00 hours of jurisdictional work and unpaid fringe benefit contributions of $11,367.08. PSOF ¶ 56.
- Twin Oaks Landscaping, Inc. at Artis Elmhurst: 427.25 hours of jurisdictional work and unpaid fringe benefit contributions of $13,642.09. PSOF ¶ 57.
- Team Installers, Inc. at Artis Bartlett: 473.00 hours of jurisdictional work and unpaid fringe benefit contributions of $14,412.31. PSOF ¶ 62.
- Team Installers, Inc. at Artis Elmhurst: 400.25 hours of jurisdictional work and unpaid fringe benefit contributions of $12,195.62. PSOF ¶ 63.
- U.S. Roofing, Inc. at Artis Bartlett: 848.50 hours of jurisdictional work and unpaid fringe benefit contributions of $25,853.80. PSOF ¶ 68.
- U.S. Roofing, Inc. at Artis Elmhurst: 721.00 hours of jurisdictional work and unpaid fringe benefit contributions of $21,968.87. PSOF ¶ 69.
- Peerless Fence, Inc. at Artis Elmhurst: 841.00 hours of jurisdictional work and unpaid fringe benefit contributions of $26,853.13. PSOF ¶ 73.
- Signs by Tomorrow, Inc. at Metro 59: 120.00 hours of jurisdictional work and unpaid fringe benefit contributions of $3,656.40. PSOF ¶ 77.

Defendants do not dispute the accuracy of Plaintiffs' calculation of damages. *See generally* Defs.' Resp. PSOF.

## Analysis

The Trust Funds' motion for summary judgment is clear-cut, relying on the Area Agreement, of which all Defendants are bound. *See generally* Mot. Summ. J. First, they point to Section 3.2, which prohibits employers from subcontracting jurisdictional work to non-union subcontractors. *Id.* at 11. Next, they assert that their trustees' determination of fringe benefit contribution liability governs when employers first violate Section 3.2 and subsequently violate Section 3.5 by failing to maintain daily records of non-union subcontractors' jobsite hours. *Id.*

Against this backdrop, the Trust Funds argue that they are entitled to summary judgment on damages. *See generally* Mot. Summ. J. They contend that Defendants breached the Area Agreement by subcontracting jurisdictional work on three projects in DuPage County, Illinois: (1) Artis Bartlett; (2) Artis Elmhurst; and Metro 59 to eleven non-union companies: A Cut Above Construction Services LLC; Garcia Professional Drywall, Inc.; Riterug Company; Custom Countertop Creations; ZLC, Inc.; Euroview, Inc.; Twin Oaks Landscaping, Inc.; Team Installers, Inc.; U.S. Roofing, Inc.; Peerless Fence, Inc.; and Signs by Tomorrow, Inc. *Id.* at 7.

Additionally, they assert that Defendants, in further breach of the Area Agreement, failed to maintain time records for the hours worked by non-union subcontractors and neglected to pay the requisite fringe benefit contributions for the hours worked by the non-union subcontractors to the Trust Funds. *Id.* at 7; 11–14. Consequently, argue the Trust Funds, based on the trustees' calculation method, Defendants are liable for 23,015.75 hours of fringe benefit contributions, amounting to $708,296.71. *Id.* at 10; 14 (citing, *inter alia*, 29 U.S.C. §1132(g)(2)(A);

*Chicago Dist. Council of Carpenters Pension Fund v. Simpson Const. Co.*, 2006 WL 3754822, at *1 (N.D. Ill. Dec. 18, 2006);*Chicago District Council of Carpenters Pension Fund v. Faith Builders*, 2001 WL 99839 at *2, 3 (N.D. Ill. Jan. 30, 2001); *Chicago District Council of Carpenters Pension Fund v. Lovering Johnson, Inc.*, 2000 WL 983555 *2, 4 (N.D. Ill. July 17, 2000); *Chicago District Council of Carpenters Pension Fund v. Skender Construction Co., Inc.*, 22 F.Supp. 2d 787, 790, 795 (N.D. Ill. 1998); *Chicago District Council of Carpenters Pension Fund v. R.J. Ward Construction, Inc.*, 1993 WL 535323 *5, 6 (N.D. Ill. Dec. 16, 1993); *Chicago Regl. Council of Carpenters Pension Fund v. Woodlawn Community Dev. Corp.*, 2011 WL 6318605, at *1 (N.D. Ill. Dec. 15, 2011)).

Furthermore, the Trust Funds maintain that—under applicable Trust Agreements, Area Agreement, and statutes—they are entitled to (a) $10,302.50 for auditors' fees pursuant to 29 U.S.C. §1132(g)(2)(D); (b) $191,314.36 for unpaid interest through November 2, 2022 pursuant to 29 U.S.C. §1132(g)(2)(B); (c) $191,314.36 again for double interest pursuant to 29 U.S.C. §1132(g)(2)(C); and (d) attorneys' fees and costs in an amount to be determined if the Court grants this motion for summary judgment consistent with Local Rule 54.3. *Id.* at 14–15 (citing 29 U.S.C. §1132(g)(1); 29 U.S.C. § 1132(g)(2)(D); *Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 902 (7th Cir. 2009)).

In response, Defendants argue that summary judgment is inappropriate for several reasons. *See generally* R. 172, Resp. First, Defendants insist that they are not bound by the Trust Funds' determination of how fringe benefit contribution liability

should be calculated, "as Defendants have presented evidence to challenge the accuracy of [their] assumptions." *Id.* at 3–7. Defendants posit that, since there is no statutory requirement to maintain records for non-signatory subcontractors, the Trust Funds cannot rely on the absence of such records to justify their calculations. *Id*. Further, Defendants contend that courts have repeatedly denied summary judgment in cases where employers have presented evidence disputing the accuracy of audit calculation. *Id*.

Second, Defendants assert that the prevailing law permits them to challenge the Trust Funds' calculations, including the use of "labor factor" assumptions, despite the rules and regulations adopted by the trustees. *Id*. at 7–14. And in so challenging, Defendants maintain that the evidence they provided supports a more precise accounting of hours worked by the subcontractors than the labor factor presumptions used by the Trust Funds. *Id*. at 13. Such evidence, in the Defendants' view, is sufficient to preclude summary judgment. *Id*.

Third, Defendants insist that the Trust Funds cannot claim contributions for work performed by Twin Oaks, as such work is within the jurisdiction of the Teamsters and International Union of Operating Engineers. *Id*. at 13–14. Relying on Section 1.1 of the Area Agreement, Defendants reason that the Trust Funds cannot claim contributions for work performed by another union if it is the existing practice of the other union to do that work. *Id*. They argue that Twin Oaks re-subcontracted the turf instillation to another company that is in fact a signatory with the Union of Operating Local 150, whose Illinois affiliate, to which Twin Oaks is a signatory,

claims this work as within their bargaining unit. *Id*. at 14 (citing *Chi. Reg'l Council of Carpenters Pension Fund v. Schal Bovis, Inc*., 826 F.3d 397, 407 (7th Cir. 2016)).

Finally, Defendants argue the Trust Funds' claims for interest and other damages must also be resolved at trial. *Id*. at 14. Defendants challenge the Trust Funds' request for auditor fees, asserting that they must provide a basis to conclude that any auditor fee is reasonable. *Id*. In support of their position, Defendants highlight that the Trust Funds initially claimed unclaimed contributions of $5,398,737, but now claim contributions of $708,296, which, in their view, undermines the credibility of the original audit, characterizing it as "frivolous and unserious." *Id*. (citing *Cork Plastering Co*., 570 F.3d at 905).

The Trust Funds, however, stand on their opening position in reply. *See generally* R. 181, Reply. Citing undisputed facts, they assert that Defendants' challenge to the labor factors adopted by the trustees is misplaced, emphasizing that Defendants "cannot create a question of fact by arguing that [they] should be excused from the rules adopted by the trustees." *Id*. at 2.

As for Twin Oaks, the Trust Funds reject Defendants' claim that a question of fact exists over whether Twin Oaks performed bargaining unit work. *Id*. In support, the Trust Funds point to the plain language of the Area Agreement, defining jurisdictional work to include installation of turf materials. *Id*.

The Trust Funds further dispute Defendants' argument that they cannot claim contributions for worked performed by Twin Oaks on the basis that such work "is within the jurisdiction of" another union. Reply at 9. They first argue that the Area

Agreement's non-interference language does not apply, as Defendants fail to provide evidence that turf instillation is exclusive to the Illinois affiliate of Union of Operating Local 150. *Id.* (citing *Trustees of Chicago Plastering Inst. Pension Tr. v. Cork Plastering, Inc.*, 2007 WL 6080197, at *26–27 (N.D. Ill. Aug. 27, 2007)). Additionally, the Trust Funds reference the declaration of James Sokolowski, a sales manager for Twin Oaks, who testified that Twin Oaks did not perform all the work, conceding instead that it subcontracted the turf instillation to ForeverLawn Chicago, and there is no evidence that ForeverLawn is a union company. *Id.* at 9–10 (citing Defs.' Resp. PSOF ¶¶ 7–9; Decl. of Sokolowski). Finally, Plaintiffs again highlight Section 3.5 of the Area Agreement, which designates turf instillation as jurisdictional work and mandates that it be performed by a signatory of the agreement, which Twin Oaks clearly was not. *Id.* (citing Defs.' Resp. PSOF ¶ 54).

Lastly, the Trust Funds contend that the "Payroll Summary" produced by A Cut Above fails to establish a genuine issue of fact. Reply at 2. They argue that these records do not constitute daily jobsite logs for subcontractor employees, as required by Section 3.5. Moreover, the records were neither created nor maintained by Defendants, and there is no indication that these records are accurate, complete, or reliable. *Id.*

Based on the Court's evaluation of the record, the parties' arguments, and applicable statutory and case law authorities, the Court finds that the Trust Funds have carried their summary judgment burden.

As a matter of course, courts interpret collective bargaining agreements according to ordinary principles of contract law. *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015); *U.S. Soccer Federation v. U.S. Women's Nat. Soccer Team Assoc.*, 190 F. Supp. 3d 777, 784 (N.D. Ill. 2016). Thus, this Court must first look at the plain language of the agreements at issue when interpreting their terms. *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 671 (7th Cir. 2013).

To begin, as noted previously, Defendants admit that they are bound by the Area Agreement and all rules adopted by the Trust Funds' trustees, including the Agreed-Upon Procedures. Defs.' Resp. PSOF ¶¶ 9–11. Defendants acknowledge that Carlson Brothers subcontracted with the eleven subcontractors identified by the Trust Funds in their Motion, affirming that the Trust Funds accurately stated the subcontracted amounts for each. *Id.* ¶¶ 14–17, 24–25, 30–31, 36, 40–41, 46–47, 52–53, 58–59, 64–65, 70, 74. Moreover, Defendants admit that none of these subcontractors were signatory to the Area Agreement. Defs.' Resp. PSOF ¶¶ 18, 26, 32, 37, 42, 48, 54, 60, 66, 71, 74.

Defendants further concede that the work subcontracted to ten of the eleven subcontractors constituted jurisdictional work. Defs.' Resp. PSOF ¶¶14–17, 24, 25, 30, 31, 36, 40–41, 46–47, 58–59, 64–65, 70, 74. However, they dispute that the artificial turf installation subcontracted to Twin Oaks qualifies as jurisdictional work. Defs.' Resp. PSOF ¶¶ 52–53.

However, as the Trust Funds correctly argue, this is not a genuine issue of disputed fact. Reply at 2. The plain language of the Area Agreement explicitly

includes the installation of simulated turf within the Union's jurisdiction. *M & G Polymers USA, LLC*, 574 U.S. at 435 (explaining that where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent). Furthermore, even if Defendants' challenge were construed as an argument that the language in Section 25.5 of the Area Agreement regarding jurisdictional work and turf installation is unclear, the determination of "whether a contract is ambiguous is a question of law," not fact. *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009).

The Court's review confirms Plaintiffs' contention that the Area Agreement's provisions are not ambiguous concerning the installation of turf as jurisdictional work. "Construed as a whole," the phrase "the work of installers…consist of … simulated turf" is neither "obscure in meaning" nor reasonably susceptible to "double meaning." *Id.*; Decl. of K. Guastaferri ¶ 3, Exhibit E (Area Agreement § 25.5); PSOF ¶, Ex. 1. "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Sterling Natl. Bank v. Block*, 984 F.3d 1210, 1217 (7th Cir. 2021). Applying this standard, the Court finds that Plaintiffs have met their burden in demonstrating that Defendants subcontracted jurisdictional work, *i.e.*, turf installation, to Twin Oaks.

As for Defendants' claim that Area Agreement's non-interference language shields them from liability for the work subcontracted to Twin Oaks, similarly, their own admissions undermine that assertion. At bottom, the basis of Defendants' non-interference challenge is that Twin Oaks is signatory with the Operating Engineers

Local 150, and the Area Agreement prohibits interference with existing practices of other unions affiliated with the Building Trades. Resp. at 13–14. However, the Area Agreement's non-interference language, as Plaintiffs argue, does not apply here for several reasons. Reply at 9–10.

First, Defendants provide no evidence that turf instillation is the exclusive jurisdiction, as required, of the Operating Engineers. On the contrary, the record evidence reflects that the Carpenters Union also claims this work, and the Area Agreement explicitly contemplates such overlapping jurisdiction. *See Cork Plastering, Inc.*, 2007 WL 6080197, at *26–27.

Second, even assuming Operating Engineers Local 150 has some jurisdictional claim, Carlson concedes through the declaration of James Sokolowski and it is undisputed that Twin Oaks did not perform the turf installation itself but instead subcontracted the work to ForeverLawn Chicago. Sokolowski Decl. Defs.' Resp. PSOF ¶¶ 7–9. There is no evidence in the record that ForeverLawn is a union contractor affiliated with any union, much less the Carpenters Union.

Third, and perhaps most critically, Section 3.5 of the Area Agreement requires that jurisdictional work be performed by a contractor signatory to the Carpenters Union's Area Agreement. Defendants admit Twin Oaks is not bound by that Agreement. That is, there is no genuine dispute of material fact as to Twin Oaks' non-signatory status. Defs.' Resp. PSOF ¶ 54. Accordingly, the Court finds that the non-interference clause provides no defense here, and Defendants remain liable for the jurisdictional work subcontracted to Twin Oaks remains under Section 3.5.

Defendants next admit that they failed to maintain daily records of the subcontractors' employees' jobsite hours at three projects, Artis Bartlett, Artis Elmhurst, and Metro 59, which are located within the Union's geographic jurisdiction in DuPage County. Defs.' Resp. PSOF ¶¶13, 19, 27, 33, 38, 43, 49, 55, 61, 67, 72, 76. Additionally, while Defendants do not dispute their failure to maintain daily time records for A Cut Above's employees, they argue that the payroll summary documents raise a factual question regarding their liability for A Cut Above. Defs.' Resp. PSOF ¶ 19.

However, as Plaintiffs argue, this also is not a genuine factual dispute. Reply at 2; 11–12. The payroll summaries do not satisfy the plain language requirements of Section 3.5, which explicitly mandates daily records—not aggregated payroll summaries. *See M & G Polymers USA, LLC*, 574 U.S. at 427; *Land of Lincoln Goodwill Industries, Inc. v. PNC Fin. Services Group, Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) ("[T]he correct understanding of a contract presents a question of law for the court.").

Consequently, in terms of Defendants meeting their contractual obligations under the Area Agreement, the payroll summaries are "insufficient." *Trustees of Chicago Regl. Council of Carpenters Pension Fund v. Riteway-Huggins Const. Services, Inc.*, 2010 WL 960360, at *4 (N.D. Ill. Mar. 15, 2010). "[The Court's] prime objective is to effectuate the intent of the parties. [It does so] by enforcing the contract as the parties have written it, as the plain language of the contract is the best

evidence of the parties' intent." *Land of Lincoln Goodwill Industries, Inc.*, 762 F.3d at 679.

The Court therefore finds that the Plaintiffs have met their burden of demonstrating that Defendants failed to comply with Section 3.5 by subcontracting jurisdictional work without maintaining the required daily records as to A Cut Above; weekly payroll summaries that lack any information as to the date the work was performed, or the location of said work do not create a factual issue on this point. *Trustees of Chicago Regl. Council of Carpenters Pension Fund*, 2010 WL 960360, at *4.

Finally, Defendants' objection to the Trust Funds' calculation of fringe benefit contributions, claiming that the labor factors set forth in the Agreed-Upon Procedures constitute "legal conclusions" is misplaced. Defs.' Resp. PSOF ¶ 11. The calculations presented by Conklin do not constitute improper legal conclusions, as testimony regarding damages calculations is generally admissible for summary judgment and are not legal conclusions. *See, e.g., First Nat. Bank of Chicago v. Material Serv. Corp.*, 597 F.2d 1110, 1119 (7th Cir. 1979); *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 924 F.2d 709, 712 (7th Cir. 1991). And as the Court noted, *see supra* at 7, Defendants do not challenge the accuracy these calculations. Accordingly, their accuracy is deemed admitted. *See* Defs.' Resp. PSOF ¶¶20–23, 28–29, 34–35, 39, 44–45, 50–51, 56–57, 62–63, 68–69, 73, 77; *see also Patterson v. Burge*, 2008 WL 4875948, at *2 (N.D. Ill. July 29, 2008) (facts not denied are deemed admitted).

Courts have consistently held that affidavits containing calculations of amounts owed are valid when the affiant explains the basis for their calculations, attaches supporting documentation, and is in a position to know and verify the relevant financial records. *See Boston Plumbing, Inc.*, 2012 WL 3758032, at *3; *Fenje v. Feld*, 301 F. Supp. 2d 781, 813 (N.D. Ill. 2003) ("[A] witness may testify to conclusions inferred from underlying facts" and "a summary judgment affidavit may include inferences and opinions as long as they are based on underlying facts of which the affiant has personal knowledge.").

Here, Conklin provided sufficient testimony supporting his qualifications and experience in conducting fringe benefit contribution audits. He worked with outside auditors James Egan & Associates, Ltd. for two years, followed by Legacy Professionals LLP for two years, before becoming employed by Plaintiffs as an Audit Coordinator in 2010. He was subsequently promoted to Audit Department Supervisor in 2017 and later became Manager of Audits and Collections in 2021. In his role, Conklin supervises Plaintiffs' audit program. Decl. of J. Conklin ¶¶ 10–12.

Moreover, his affidavit includes the materials he relied upon in making his calculations, and Defendants have not disputed the accuracy of these calculations. See generally Decl. of J. Conklin. Accordingly, given Defendants' failure to challenge the calculations substantively, all paragraphs objected to regarding the fringe benefit contributions are deemed admitted. *Burge*, 2008 WL 4875948, at *2.

In light of Defendants' admissions and the Court's findings, the Defendants' arguments are unpersuasive. Defendants concede that they are bound by the Area

Agreement and the rules established by the Trust Funds' trustees. Defs.' Resp. PSOF ¶¶ 9–11. Given this admission, it follows that the labor factors set forth in the Agreed-Upon Procedures, adopted by the trustees, are binding. Yet, Defendants now seek to undermine these agreed-upon standards by advocating for different labor factors to be applied retroactively. *See generally* Resp.

This position is inconsistent with their prior admissions and fails to present a genuine issue of disputed fact. The Trust Funds' methodology in calculating fringe benefit contributions is based on established rules within the agreement, which the Defendants have acknowledged as binding. Defs.' Resp. PSOF ¶¶ 20–23, 28–29, 3435, 39, 44–45, 50–51, 56–57, 62–63, 68–69, 73, 77; *see also Burge*, 2008 WL 4875948, at *2 (reaffirming that facts not denied are deemed admitted). The Court cannot disregard these agreed-upon rules without undermining the integrity of contractual obligations entered into by sophisticated entities. *Sterling Natl. Bank*, 984 F.3d at 1217; *S. Fin. Group, LLC v. McFarland State Bank*, 763 F.3d 735 (7th Cir. 2014) (recognizing that, except in the most extraordinary circumstances, courts hold sophisticated parties to the terms of their bargain).

Thus, accepting Defendants' argument would require the Court to substitute the labor factors determined by the trustees with an alternative methodology that has no basis in the agreement. Such an action would effectively rewrite the terms of the agreement rather than enforce them. This the Court declines to do. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881 (7th Cir. 2005) ("Courts are not in the business of rewriting contracts to appease a disgruntled party unhappy with the bargain it

struck.”). Accordingly, the Trust Funds’ unchallenged calculations remain valid, and Defendants’ objection fail as a matter of law. *Trustees of Chicago Regl. Council of Carpenters Pension Fund v. Francis, LLC*, 2013 WL 1283797, at *4 (N.D. Ill. Mar. 27, 2013) (“By signing that Agreement …, [signatory] Francis expressly agreed ‘to be bound to the terms of the various Trust Agreements to which contributions are required to be made under the [CBA], including all rules and regulations adopted by the Trustees of each Fund.’”); *see also Plumbers & Steamfitters Loc. No. 434 Health & Welfare Fund v. CCK, Ltd.*, 2013 WL 12234528, at *1 (W.D. Wis. Mar. 14, 2013) (“By adopting the collective bargaining agreements and by adopting and assenting to the Funds' trust agreements, [signatory] CCK assented to all rules and regulations adopted by the Trustees of the Funds.”).

The authority relied on by Defendants do not change this outcome. For example, Defendants cite *Trustees of N.E.C.A.-IBEW Loc. 176 Health, Welfare, Pension, Vacation and Training Tr. Funds v. New Frontier Elec. Constr. Inc.*, 2021 WL 4146919, at *7 (N.D. Ill. Sept. 13, 2021), to support their position that summary judgment is inappropriate in light of the evidence they provided purportedly undermining the accuracy of the trustees’ calculations. *See* Resp. at 3. *New Frontier’s* reach, however, does not extend as far as Defendants suggest.

In *Trustees of the New Frontier*, the court recognized two key factual disputes regarding the employer’s contributions. First, the plaintiffs asserted that certain individuals performed covered work during the relevant period, while the defendant contended that those individuals were not employees and that at least one did not

perform covered work. 2021 WL 4146919, at *6. Second, there was disagreement over whether the audit failed to account for payments made to subcontractors for materials. 2021 WL 4146919, at *7. Specifically, the defendant argued that the audit overlooked certain non-labor expenses, such as material costs. *Id.* ("Defendant argues that the audit does not account for certain non-labor items such as costs and materials, and the record contains some support for this argument. As such, genuine disputes as to the audit's calculations . . . preclude the issuance of summary judgment.") (cleaned up).

*New Frontier*, however, is distinguishable from this case in critical respects: Defendants acknowledge that Carlson Brothers subcontracted with the eleven subcontractors identified by the Trust Funds in their Motion, and there was no evidence in *New Frontier* that the fringe benefit funds had established a procedure or rule for calculating liability associated with non-union subcontracting or applied a "labor factor" to differentiate between labor and material costs.

Furthermore, here, by contrast, Plaintiffs' trustees have proactively accounted for the distinction between labor and material costs when allocating payments to subcontractors. PSOF ¶ 11. Additionally, Defendants, by agreeing to be bound by the rules adopted by Plaintiffs' trustees, accepted the prescribed method of allocation. Defs.' Resp. PSOF ¶ 10. Accordingly, Defendants' reliance on *New Frontier* is misplaced.

Similarly, neither *Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995) nor

*Trustees of Chicago Regl. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 2019 WL 2208351, at *6 (N.D. Ill. May 22, 2019) support the Defendants' positions. *See* Resp. at 4–6.

In *Steve Gilbert Trucking*, the fringe benefit funds sought to recover contributions based on hours worked, calculated from wages paid by the employer. *Steve Gilbert Trucking*, 71 F.3d at 1364. The employer challenged the accuracy of the funds' audit and calculation of damages, pointing to an affidavit wherein its owner testified that he paid end of year bonuses that were recorded as regular income and that he did not pay all employees union scale wages. *Id.* at 1366. The funds' auditor testified that if the employer paid employees bonuses and did not pay the union wage rate, the wage-based calculation would be inaccurate. *Id.* at 1366. The court found that the employer's testimony, asserting that bonuses were paid and not accounted for in the audit, raised a genuine issue of material fact as to the audit's accuracy. *Id.* at 1367. Similarly, in *Celtic Floor Covering*, the employer presented evidence showing that it had already made contributions to other fringe benefit funds, casting doubt on Plaintiffs' claim that additional payments were owed. 2019 WL 2208351, at *5. The court determined that this conflicting evidence created a question of fact. *Id.* (citing *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001)) ("Defendant's assertion that it made contributions for the employees in question raises a genuine issue of material fact.").

Neither *Steve Gilbert Trucking* nor *Celtic Floor Covering* is applicable here. In those cases, the central dispute was whether contributions had already been paid. In

contrast, Defendants' challenge is not about payment but rather about their obligation to pay amounts determined under the Agreed-Upon Procedures established by Plaintiffs' trustees. *See generally* Resp. Unlike the employer in *Steve Gilbert Trucking*, Defendants do not argue that they paid subcontractors for anything beyond labor and materials (such as bonuses), nor do they dispute the labor factors used to allocate payments. *Id.*

Similarly, Defendants, unlike the employer in *Celtic Floor Covering*, do not assert that they have already paid the fringe benefit contributions in question. *Id.* Instead, Plaintiffs have adopted rules governing fringe benefit contributions for union employers that subcontract jurisdictional work to non-union employers but fail to maintain required records, rules to which Defendants expressly agreed to be bound. Defs.' Resp. PSOF ¶ 10. Thus, Defendants cannot manufacture a genuine dispute by asserting that a *different* calculation method should apply.

Finally, regarding the auditor's fee, Defendants do not expressly argue that the auditor's fee sought by the Trust Funds is unreasonable. Resp. at 14. Instead, they assert that Plaintiffs "must demonstrate why they are entitled to any compensation for adjusting an audit which was unsupported from the start," emphasizing the disparity between the original audit figure ($5,398,737) and the revised claim ($708,296). *Id.* (citing PSOF ¶¶ 12; 14–77). According to Defendants, these shifting numbers suggest the original audit was "frivolous and unserious." *Id.* But that argument, at most, calls into question the reliability of the audit itself; it does not directly contest the reasonableness of the auditor's fee under applicable law.

This Court is not in the business of making arguments for the parties. As the Supreme Court has explained, "[i]n our adversarial system of adjudication, we follow the principle of party presentation, [which is] designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *U.S. v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

"Federal judges are [busy] generalists." *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc.*, 698 F.3d 346, 350 (7th Cir. 2012). They cannot be expected to develop arguments not briefed. Relatedly, "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Mwangangi v. Nielsen*, 48 F.4th 816, 832 (7th Cir. 2022) (quoting *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990).

Accordingly, because Defendants neither support nor develop an argument challenging the reasonableness of the auditor's fee, the Court declines to infer or construct one on their behalf.

**Conclusion**

For all of the foregoing reasons, Plaintiffs' motion for summary judgment is granted. Judgment is hereby granted in favor of the Trust Funds for (1) unpaid fringe benefit contributions in the amount of $708,296.71 pursuant to 29 U.S.C. §1132(g)(2)(A); (2) auditors' fees in the amount of $10,302.50 pursuant to 29 U.S.C.

§1132(g)(2)(D); (3) unpaid interest pursuant to 29 U.S.C. §1132(g)(2)(B) in the amount of $191,314.36 through November 2, 2022; (4) double interest through November 2, 2022 in the amount of $191,314.36 again pursuant to 29 U.S.C. §1132(g)(2)(C); and (5) attorneys' fees and costs pursuant to 29 U.S.C. 1132(g)(1) and 29 U.S.C. §1132(g)(2)(D) in an amount to be determined consistent with Local Rule 54.3.

Dated: June 12, 2025

United States District Judge
Franklin U. Valderrama